UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LESA COADY,
    PLAINTIFF

CASE NO. 1:08CV893
(WEBER, J.)
(HOGAN, M.J.)

VS.

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,
    DEFENDANT

## REPORT AND RECOMMENDATION

Plaintiff filed her applications for Disability and Supplemental Security Income in October, 2005. Plaintiff's applications were denied both initially and upon reconsideration. Plaintiff then requested and obtained a hearing before an Administrative Law Judge (ALJ) in June, 2008 at Cincinnati, Ohio. Plaintiff, who was represented by counsel, testified as did Janice Bending, Ph.D., a Vocational Expert (VE). The ALJ reached an unfavorable result in July, 2008. Plaintiff processed an appeal to the Appeals Council, which denied review in October, 2008. Plaintiff then timely filed her Complaint seeking judicial review.

## STATEMENTS OF ERROR

The Plaintiff's first Statement of Error is that the ALJ failed to find Plaintiff's hypertension and headaches were severe impairments. The second is that the ALJ erred by failing to find Plaintiff's testimony credible. The third is that the ALJ failed to fully develop the record. The fourth and last is that the ALJ failed to give controlling weight to the opinion of the treating physician.

## PLAINTIFF"S TESTIMONY AT THE HEARING

Plaintiff testified that she lives with her 34-year-old daughter in a two-family house, is

right-handed, 5'3" tall and weighs 109 lbs. She holds a GED, presently receives food stamps and has a medical card. Prior work during the 1990-2003 period was secretarial and clerical. She last worked in 2003 and was laid off for economic reasons. During the period of unemployment, she had a stroke as a result of a brain aneurysm in September, 2005, her alleged onset date. In August, 2005, prior to the aneurysm, doctors discovered a lesion on her left upper lung and surgically removed it.

Plaintiff testified that she suffered from a collapsed lung and subsequent pneumonia, but it was not clear whether the collapsed lung occurred before or after the surgery to remove the lesion.

In any event, Plaintiff testified that she suffers from loss of breath after exertion and sees Drs Striet and Khan. The only medications she takes are for high blood pressure. She mentioned Lisinopril, Hydroflumethiazide, Norvasc,Toprol and Tylenol. The only undesirable side effect she mentioned that resulted from the stroke is a lack of full motor function regarding the use of her hands. Plaintiff also testified that she has migraine headaches at the rate of 6 times per week, but takes only over-the-counter medications for them because she has high blood pressure. The headaches are sometimes accompanied by light sensitivity, nausea and vomiting. Plaintiff represented that she stopped smoking and abusing alcohol, but still has an occasional drink.

Plaintiff said that she was unable to vacuum, mop, and do laundry, but that she could "do light dishes," sweep, shop with her daughter and attend church. She estimated that she could sit for an hour, stand for an hour and walk for about five minutes. She takes 2-3 hour naps every day. When asked why she could not return to her past relevant work, Plaintiff said that she would not be able to concentrate, had decreased motor skills, headaches and leg pains. (Tr. 334-349).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The VE was asked to assume that Plaintiff could lift 20 lbs. occasionally and 10 lbs. frequently, stand/walk for 6 hours, sit for 6 hours in a workday, can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds or balance, can occasionally stoop, kneel, crouch and crawl, and should avoid exposure to hazardous machinery and unprotected heights. The VE responded that Plaintiff could still perform her prior work as a secretary or clerk.

2

The second hypothetical asked the VE to assume the same limitations as the first, but to add that she be limited to simple one and two-step instructions, to routine repetitive tasks and to avoid a rapid pace. The VE then testified that Plaintiff could not perform her past relevant work, but she could perform the jobs of general office clerk, tester, inspector, weigher and sorter, jobs which exist in representative numbers in the national economy.

The third hypothetical was based on the Plaintiff's testimony. The VE testified that if full credibility was attached to the Plaintiff's testimony, she would be unemployable. (Tr. 349-355)

## THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff had the following severe impairments: "status post large aneurysms bilaterally in the brain, greater on the right than the left, with aneurysm bleed, resolved on or about March 7, 2006." The ALJ did not find Plaintiff's migraine headaches or elevated blood pressure to be severe impairments. The ALJ's residual functional capacity assessment was reflected in his first hypothetical question to the VE. The ALJ then determined that Plaintiff could return to her past relevant work as a clerk/secretary, but if Plaintiff's residual functional capacity was as reflected in the second hypothetical question, there would still be a representative number of jobs at the light exertional level. (Tr. 13-19).

## THE MEDICAL RECORD

Plaintiff was discharged from University Hospital in August, 2005 with a diagnosis of "left upper lobe cavitary lesion with air fluid level likely to be anacrobic lesion." She had a bronchoalvolar lavage and CT scan of the chest. The history indicated that Plaintiff had a "40 pack per year smoking" habit and consumed 1 pint of gin per day. She was counseled to stop smoking and limit her alcohol intake to 1 drink per day. She had complained of weight loss, a cough and chest pain. A chest x-ray showed the right lung to be clear. Bronchoscopy showed "purulent secretions in the trachea and right and left bronchial trees." Discharge prescriptions were for Augmentin, a multi-vitamin and a Nicotine patch. (Tr. 165-186).

Shortly afterward, in September, 2005, Plaintiff was again treated at University Hospital for her complaints of elevated blood pressure and left-side weakness relative to her left hand and forearm. Her blood pressure was 194/102, described as "extremely markedly elevated." A CT scan of the head showed a "intraparenchymal hemorrhage in the right basal ganglia (and) surrounding edema." Daniel Handel, M.D., requested a neurosurgical consultation. Plaintiff left the hospital against medical advice that she could experience a "massive stroke." (Tr. 187-194).

In September, 2005, a chest x-ray was taken and compared with an earlier x-ray taken in August, 2005. Dr. Sobel, the radiologist, reported that "There has been interval improvement of the left upper lobe opacity. A cavitary lesion containing an air-fluid level is again imaged and appears much smaller in size. No new areas of airspace disease are appreciated." (Tr. 195). A CT of the head, also done in September, 2005, showed "intracerebral hematoma with surrounding edema" and "lacunar infarct in the left thalamus." (Tr. 196-197). An MRI of the head demonstrated a "intracranial hemorrhage." (Tr. 202-204).

Plaintiff was examined in January, 2006 by Martin Fritzhand, M.D. Her primary complaint at the time was shortness of breath. Dr. Fritzhand reported that Plaintiff can "ambulate on level terrain without difficulty, but has dyspnea upon climbing stairs or walking up grades." Her blood pressure was 205/88. Her lungs were "clear without rales, rhonchi, wheezes or evidence of cyanosis." There is "no clinical endorgan damage due to hypertension." Dr. Fritzhand was unable to comment on Plaintiff's lung function in the absence of pulmonary function studies. Dr. Fritzhand's diagnoses were: (1) H/O pneumonia and cavitary lesion, (2) H/O intraparenchymal hemorrhage in the right basal ganglia, (3) hypertension and (4) sinus tachycardia. (Tr. 210-216).

A mammogram, taken in March, 2006, showed a "lobular mass in the left breast" and an "oval mass in the right breast." Ultrasound was recommended. (Tr.. 219)

A Physical Residual Functional Capacity Assessment was done in April, 2006 by Sarah Long, M.D. Dr. Long opined that Plaintiff could lift 20 lbs. occasionally and 10 lbs. frequently, stand/walk for 6 hours in a workday and sit for 6 hours in a workday. Dr. Long indicated that Plaintiff's hypertension is "only fairly well-controlled" that the aneurysm "has not been repaired"

4

and that "she is at risk for rupture of the aneurysm with activities that cause a significant rise in blood pressure." Dr. Long indicated that Plaintiff should never balance or climb ladders, scaffold or ropes,. but that she could occasionally stoop, kneel, crouch or crawl. (Tr. 234-243).

In April, 2007, Plaintiff had surgery at Mercy Franciscan Hospital to correct a hammertoe. Rodney Roop, D.P.M., performed the surgery. (Tr. 248-249).

Plaintiff was admitted to University Hospital in August, 2006 for surgical treatment of her aneurysm. The history taken indicated that her rate of cigarette smoking had reduced to 1/3 pack per day. She admitted to shortness of breath "when she is exerting herself." She had a ministroke in 2005. Her lungs were clear with no wheezes, crackles or rales. (Tr. 260-262). The surgical procedure, called "right frontotemporal craniotomy and clipping of right posterior communicating artery aneurysm." was performed in August, 2006 by Mario Zuccarello, M.D. (Tr. 262-264). The aneurysm was diagnosed by a CT scan and MRI.

A renal ultrasound was performed in October, 2006. results showed a normal right kidney and a "disproportionately small left kidney with "no morphologic abnormality" and "no evidence of hydronephrosis." (Tr. 266). Plaintiff was admitted to University Hospital in October, 2006 for "acute renal failure." (Tr.. 267) and in August, 2007 for pancreatitis after complaining of abdominal pain. (Tr. 269-270).

A mammogram detected lumps on both of Plaintiff's breasts; both lumps proved to be benign after biopsies were taken. (Tr. 304-306).

An MRI of the head in May, 2006 disclosed a "stable appearance of multiple aneurysms, largest involving the right posterior communicating region. (Tr. 318).

## OPINION

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir.1984). The severity requirement may be employed as an administrative convenience to

screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen*, No. 87-6189, slip op. At 4 (6th Cir. Oct.28, 1988). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler*, 771 F.2d 966 (6th Cir. 1985).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

The grid is designed for use when the alleged impairment manifests itself through limitations in meeting the strength requirements of jobs. 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). If plaintiff suffers solely from nonexertional impairments, the grid is inapplicable and the Commissioner must rely on other evidence to rebut plaintiff's prima facie case of disability. *Id.*, § 200.00(e)(1). Nonexertional impairments include "certain mental, sensory, [and] skin impairments" as well as "postural and manipulative limitations [and] environmental restrictions." 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). Where a plaintiff suffers from an

7

impairment or a combination of impairments that results in both exertional and nonexertional limitations, the grid is consulted to see if a finding of disability is directed based upon the strength limitations alone. If not, the grid is then used as a framework and the Commissioner examines whether the nonexertional limitations further diminish plaintiff's work capability and preclude any types of jobs. *Id.*, § 200.00(e)(2). If an individual suffers from a nonexertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Commissioner may use the grid as a framework for a decision, but must rely on other evidence to carry his burden. *Abbott v. Sullivan*, 905 F.2d 918, 926-27 (6th Cir. 1990); *Damron v. Secretary of H.H.S.*, 778 F.2d 279, 282 (6th Cir. 1985); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528-29 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). The existence of a minor nonexertional impairment is insufficient to preclude use of the grid for directing a decision. Rather, plaintiff must demonstrate that the nonexertional impairment "significantly limits" his ability to do a full range of work at the appropriate exertional level in order to preclude a grid based decision. *Atterberry v. Secretary of H.H.S.*, 871 F.2d 567, 572 (6th Cir. 1989); *Cole v. Secretary of H.H.S.*, 820 F.2d 768, 771-72 (6th Cir. 1987); *Kimbrough v. Secretary of H.H.S.*, 801 F.2d 794, 796 (6th Cir. 1986).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson v. Secretary of H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson*, 735 F.2d at 964; *Kirk*, 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v. Weinberger,* 512 F.2d 664

(4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.,* 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley v. Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.,* 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Noe v. Weinberger,* 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.,* 39 F.3d 115, 118 (6th Cir. 1994).

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530-31 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler,* 756 F.2d 431 (6th Cir. 1985). However, a summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. *Cornett v. Califano,* No. C-1-78-433 (S.D. Ohio Feb. 7, 1979) (LEXIS, Genfed library, Dist. file). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters,* 127 F.3d at 530. If not contradicted by any

9

substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). However, a physician's statement that plaintiff is disabled is not determinative of the ultimate issue. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walter v. Commissioner*, 127 F.3d 525, 529 (6th Cir. 1997); *Shelman*, 821 F.2d at 321.

It is the Commissioner's function to resolve conflicts in the medical evidence and to determine issues of credibility. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The Commissioner's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990). The Commissioner must state not only the evidence considered which supports the conclusion but must also give some indication of the evidence rejected in order to facilitate meaningful judicial review. *Hurst v. Secretary of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). *See also Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the

10

Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

The first Statement of Error is that the ALJ erred by his failure to find either Plaintiff's high blood pressure or her migraine headaches to be severe. The ALJ committed no error, certainly in reference to his finding relative to Plaintiff's high blood pressure. It is true, as Plaintiff argues, that her blood pressure was significantly elevated in September, 2005 and in January, 2006, but it started a somewhat downward trend in February, 2006 and at the time of her presurgical examination in August, 2006, her blood pressure was 134/69. That she had a history of hypertension is undeniable, but Zocor and Lisinopril seemed to be effective in lowering it to acceptable levels. In any event, there is no medical opinion to the effect that Plaintiff has functional deficits resulting from high blood pressure and none is apparent, especially when light work was recommended.

Plaintiff does suffer from migraine headaches and there is an undeniable link between both high blood pressure and headaches and between brain aneurysms and headaches, however, her hypertension was reasonably controlled by medications and her aneurysm was surgically repaired in August, 2006. As the ALJ pointed out, a University Hospital Progress Note in March, 2006 indicated, there were no symptoms and this was 5 months prior to the surgery. There is no

11

medical opinion suggesting any functional deficits resulting from Plaintiff's migraine headaches.

The second Statement of Error asserts error in reference to the credibility finding made by the ALJ. The ALJ's point was not that Plaintiff was a malingerer, because there was an objective source for her headaches and objective proof, via CT scans and MRIs and surgery, that she had brain aneurysms. The ALJ found that her statements regarding the intensity of her symptoms were inconsistent with the medical evidence. After a careful review of the evidence, we agree.

The ALJ is accused of failing to fully develop the record. Plaintiff's brief makes it clear that what is meant by that assertion is that the ALJ did not request that the record be examined by a medical expert and that an opinion be expressed by the medical expert. Two points immediately come to mind. The first is that Plaintiff was represented by counsel, whose job it is to see that the record is developed. Second, the ALJ was never asked to secure the opinion of an expert. An additional reason is that the ALJ already had the opinions of Drs. Frizhand and Long, and discounted the opinion of Dr. Khan, who stated on two forms completed for Hamilton County Jobs and Human Services, that Plaintiff was disabled due to brain aneurysms and hypertension, but failed to document any rationale for his conclusion on either form. While more information could have certainly been helpful, we do not believe the ALJ abused his discretion by failing to secure same in the absence of a legitimate dispute between professionals.

Lastly, the "treating physician" rule is invoked to argue that the ALJ should have accepted the opinion of Dr. Khan instead of Drs. Long and Frizhand. Dr. Khan is an internist employed by the Hoxworth Clinic at University Hospital. Dr. Khan is a treating physician, but neither the time he served as a treating source nor the scope of his treatment is apparent from the record. Dr. Khan did complete a form called "Request for Limited Medical Data" and provided an opinion that Plaintiff was unable to work 11-12 months from April 25, 2006 and later for 12 months from September 18, 2006, and his did state that the reason was "brain aneurysms with surgery for clipping, hypertension and Hepatitis B," but neither form contains more than a diagnosis and a conclusion. More importantly, neither form contains any rationale for the conclusion reached and neither form states any functional deficits resulting from the various impairments. The ALJ regarded these as unworthy even of mention and so did we as we didn't even include them in our analysis of the medical record. An opinion without supporting reasons is entitled to very little

12

credibility and the ALJ so concluded. We find no error in his analysis or opinion.

## CONCLUSION

Because substantial evidence supports the ALJ's opinion, we find that the decision of the ALJ should be AFFIRMED and this case should be DISMISSED from the docket of the Court.

February 26, 2010

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

13